UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KATHLEEN M. MIELNICKI

        Plaintiff,

    v.                                 **REPORT AND RECOMMENDATION**
                                        5:06-CV-1413 (DNH)

MICHAEL J. ASTRUE,[1]

        Defendant,

### I.    Introduction

Plaintiff Kathleen M. Mielnicki brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").[2]  Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and contrary to the applicable legal standards.  The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds that the Commissioner's decision contains legal error.  Therefore, the Court recommends that Plaintiff's Motion for Judgment on the Pleadings be granted in part and Defendant's Cross-Motion for

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of the Social Security Administration.  Pursuant to Federal Rules of Civil Procedure 25(d)(1), he is automatically substituted for former Commissioner Jo Anne Barnhart as the defendant in this action.

[2] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated February 23, 2009.

Judgment on the Pleadings be denied.[3]

## II.      Background

On October 1, 2004, Plaintiff protectively filed applications for SSI and DIB, claiming an onset date of April 1, 2004 (R. at 46, 47, 223).[4] Plaintiff alleges disability due to pain and limitations in her lower back, migraine headaches, depression, anxiety, and the side effects of her medications. Her application was denied initially on December 29, 2004 (R. at 226, 230).[5] Plaintiff filed a timely request for a hearing on March 24, 2005 (R. at 28).

On January 19, 2006, Plaintiff appeared before the ALJ (R. at 16). The ALJ considered the case *de novo* and, on May 22, 2006, issued a decision finding Plaintiff not disabled (R. at 23). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on September 15, 2006 (R. at 5-7).[6] On November 22, 2006, Plaintiff filed this action.

## III.     Discussion

### A.      Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v.

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).
[4] Citations to the underlying administrative record are designated as "R."
[5] Both the ALJ and Plaintiff state that Plaintiff's application was denied on October 25, 2004. Plaintiff's Brief, p. 2; (R. at 16). However, evidence in the record indicates that Plaintiff's application was in fact denied on December 29, 2004 (R. at 226, 230).
[6] The Appeals Council originally denied the request for review on August 25, 2006 (R. at 9-11). After the denial, Plaintiff submitted a mental assessment completed after the ALJ's decision by Plaintiff's treating psychiatrist, Dr. Batki (R. at 8). On September 15, 2006, the Appeals Council received the additional evidence, made it part of the record, but again denied review (R. at 5-8).

Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable

3

deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established the following five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

**B.    Analysis**

**1.  The Commissioner's Decision**

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff met the insured status requirements of the Act through December 31, 2004 (R. at 18); (2) Plaintiff has not engaged in any substantial gainful activity at any point relevant to his decision (R. at

4

18); (3) Plaintiff's depressive disorder, panic disorder without agoraphobia, and opioid dependence in remission with daily methadone therapy were severe (R. at 18); (4) Plaintiff's obesity, gastroesophageal reflux disorder, hypertension, insomnia, asthma, low back pain and migraines are not severe (R. at 18); (5) Plaintiff's impairments did not either individually, or in combination, meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 20); (6) Plaintiff had the following residual functional capacity ("RFC"):

> [the ability] to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 2 hours total in an 8-hour workday, 30 minutes at a time, sit 6 hours total in an 8-hour workday, 1 hour at a time and push and/or pull 20 pounds occasionally and 10 pounds frequently. Postural limitations would include no ladders, scaffolds or crawling. Environmental limitations include avoidance of concentrated exposure to fumes, dust, odors and gasses.  Mentally, the claimant can perform simple tasks both independently and with supervision, work in a low stress environment, defined as only occasional changes in the work setting and only occasional contact with the public.

(R. at 20); (7) Plaintiff's statements concerning the intensity, duration, and limiting effects of her alleged symptoms are not entirely credible (R. at 21); (8) Plaintiff was capable of performing her past relevant work as a data entry clerk (R. at 23). Ultimately, the ALJ found that Plaintiff was not under a 'disability' as defined by the Act, from April 1, 2004, her alleged onset date, through the date of his decision (R. at 23).

  **2.  Plaintiff's Claims:**

Plaintiff argues that the Commissioner's decision was not supported by substantial evidence and contrary to the applicable legal standards.  Specifically, Plaintiff argues a) the ALJ erred in failing to grant proper weight to Plaintiff's treating physicians; b) the ALJ erred in not finding Plaintiff credible; and c) the ALJ failed to take

into account Plaintiff's obesity and the side effects of her medications.

### a. The ALJ Erred in Discounting the Opinions of Plaintiff's Treating Physicians

Plaintiff argues that the ALJ improperly discounted the opinions of Plaintiff's treating physicians. Plaintiff's Brief, pp. 8-10. Plaintiff also argues that the ALJ improperly substituted his own opinion for the opinions of Plaintiff's treating physicians. Id.

According to the "treating physician's rule,"[7] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Plaintiff was treated by several physicians at the Crouse Chemical Dependency Outpatient Treatment Clinic for her chemical dependency and mental impairments from April 5, 2004, until January 6, 2006. See (R. at 139-155, 204-222). Psychiatrist Dr. Batki was one of the physicians who treated Plaintiff at the facility. On January 13, 2006, Dr. Batki completed a mental assessment of Plaintiff (R. at 195-198). Dr. Humphrey, of Northeast Family Physicians was Plaintiff's treating physician for her various ailments, both physical and mental. (R. at 119-138). Plaintiff was treated at

---

[7] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

Northeast Family Physicians from January 21, 2004 until May 5, 2004 (R. at 119, 138). On January 17, 2006, Dr. Humphrey completed an assessment of Plaintiff's pain and physical abilities (R. at 198, 199-202).

The ALJ declined to grant the opinions rendered by these two physicians controlling weight because "[t]he later opinions of doctors Batki and Humphrey appear to be based primarily on the subjective complaints of the claimant and since I did not find her entirely credible, I do not accord the opinions controlling weight" (R. at 22). It was error for the ALJ to discount these opinions in this manner. See Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003) ("[A] patient's report of complaints, or history, is an essential diagnostic tool."); see e.g., McCarty v. Astrue, 2008 WL 3884357, at *6 (Aug. 18, 2008 N.D.N.Y.) (finding that "reliance on Plaintiff's subjective complaints is not a valid basis for rejecting [the treating physician's] opinion.").

The ALJ also appears to grant both opinions minimal weight because they are not supported by findings in their respective treatment notes (R. at 22).[8] However, the ALJ failed to engage in an analysis of how these findings did not support the doctors' opinions, or even mention to which findings he was referring.

Moreover, "the lack of specific clinical findings in the treating physician's report [does] not, standing by itself, justify the ALJ's failure to credit the physician's opinion." Clark v, Comm'r of Soc. Sec., 143 F.3d at 118 (citing Schaal, 134 F.3d 496)). The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte,* even if plaintiff is represented by counsel" to determine

---

[8] Dr. Batki's opinions were granted little weight because his "treatment notes reveal limited findings to support these limitations" (R. at 22). Dr. Humphrey's opinions were granted little weight because her "treatment notes . . . fail to support the opinions." Id. The Court assumes that the ALJ was discounting both opinions for the same reason, a failure to base their opinions on clinical findings.

upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y. 2005) (citing Clark, 143, F.3d at 118; Schaal, 134 F.3d at 505); See also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source . . . does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

The Court also notes that Dr. Batki completed a second assessment of Plaintiff's mental limitations on July 31, 2006, approximately two months after the ALJ made his decision (R. at 232-234). This mental assessment was submitted to the Appeals Council by Plaintiff in her request for review (R. at 8). Dr. Batki's opinion became part of the record when the Appeals Council denied that request (R. at 9-11); Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996). ("[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision."). On remand, the ALJ must consider this evidence in his decision and grant it appropriate weight.

Therefore, the Court recommends that the matter be remanded to allow the ALJ an opportunity to properly assess the weight to be assigned to the opinions of Plaintiff's treating physicians, Dr. Batki and Dr. Humphrey.

### b. The ALJ's Credibility Analysis is Supported by Substantial Evidence

Plaintiff argues that the ALJ improperly assessed her credibility by failing to adequately explain his reasoning. Plaintiff's Brief, pp. 10-11.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979))  First, in analyzing credibility, the ALJ must determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at *2. Second, if medically determinable impairments are shown, the ALJ must then evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush, 2008 WL 4186510, at *12. And, because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[9] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

---

[9] The listed factors are: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

The ALJ began the two-step analysis by finding at the first step that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms" (R. at 21). The ALJ then went on to step two and found "that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." Id. These findings are in compliance with the two-step analysis set forth in S.S.R. 96-7p. S.S.R. 96-7p, 1996 WL 374186, at *2.

The ALJ appears to have based his credibility finding largely on Plaintiff's daily activities. For example, the ALJ noted that she has a child who lives with her and "[s]he has reported to treating and examining sources that she can complete her activities of daily living and take public transportation (R. at 21). The ALJ also noted the recommendation by Plaintiff's physician[10] on April 5, 2005, that she return to work "to keep herself busy" (R. at 21, 208-09). The ALJ discussed Plaintiff's daily activities and found that they were "inconsistent with her claimed inability to perform substantial gainful [activity]" (R. at 21).

At other points in the decision, the ALJ also discussed the efficacy of Plaintiff's medications. The ALJ noted that "[t]hroughout the course of treatment [at Crouse Chemical Dependency Psychiatric Clinic, Plaintiff's] symptoms of anxiety and depression have been exacerbated by social stressors and her medication has been adjusted numerous times in an attempt to control these symptoms" (R. at 18-19) (internal citations removed). The ALJ also found that "[t]he record indicates that the

---

[10] The ALJ erroneously stated that this was Dr. Batki's opinion, it was in fact Dr. Kahn's (R. at 208-09). Dr. Kahn is a co-worker of Dr. Batki at the Crouse Chemical Dependency Outpatient Treatment Clinic. See eg. (R. at 195, 208).

10

claimant's migraine headaches and hypertension are controlled by medication . . . . Her asthma appears to be controlled by medication with no hospitalizations . . ." (R. at 20).

Finally, the ALJ also mentioned precipitating and aggravating factors to Plaintiff's pain. For example, the ALJ noted that Plaintiff's "gastroesophageal reflux disease has been attributed to her lifestyle" (R. at 20). The ALJ also noted that Plaintiff's "obesity is attributable to her methadone and caffeine use. Caffeine use is also somewhat responsible for her insomnia." Id. Because, the ALJ appropriately considered a number of the controlling factors listed in the regulations in his decision, the Court finds that the ALJ's credibility analysis is supported by substantial evidence.

       c.      The ALJ Must Consider Plaintiff's Obesity and the Side Effects of Her Medications

Plaintiff's final argument is that the ALJ failed to consider her need to take naps during the day. Plaintiff's Brief, p. 11. The Court assumes Plaintiff is basing this argument on the ALJ's failure to consider the side effects of her medications, which she alleges causes drowziness.[11] Plaintiff's Brief, p. 3, 7. Plaintiff also argues that the ALJ erred in not considering her obesity. Id.

The ALJ found Plaintiff's obesity not severe, but failed to make a finding as to the severity of the side effects of her medications (R. at 18). In his decision, the ALJ noted Dr. Humphrey's opinion that the side effects would "severely limit her effectiveness" (R. at 22) and further considered Plaintiff's testimony that "[h]er medications make her drowsy, forgetful and confused" (R. at 21, 245). The ALJ also noted Plaintiff's testimony

---

[11] Side effects of medications are also a factor when considering credibility. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii). However, Plaintiff argues that the ALJ erred in failing to consider the side effects of her medication because it is a non-exertional impairment. Plaintiff's Brief, p. 7. Plaintiff does not argue that this failure affected the ALJ's credibility analysis.

that her obesity caused her leg and back pain (R. at 21).  It is therefore unclear from the ALJ's decision why he failed to include any limitations from Plaintiff's side effects and obesity in his RFC analysis.  In determining an RFC, the ALJ is required to consider all of Plaintiff's impairments, even those found not severe.   20 C.F.R. § 404.1545(a)(2), 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including you medically determinable impairments that are not 'severe'. . . when we assess your residual functional capacity."),. Therefore, on remand, the Court recommends that the ALJ consider all of Plaintiff's impairments, even those he found not severe.

## Conclusion

Based on the foregoing, it is recommended that Defendant's motion for judgment on the pleadings should be DENIED; Plaintiff's cross motion for judgment on the pleadings should be GRANTED in part and DENIED in part and REMANDED for reconsideration.

/s/ Victor E. Bianchini
Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York

DATED:    June 4, 2009

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York

DATED:      June 4, 2009